UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, 2100 L Street, NW Washington, DC 20037, <br><br> THE OCEAN CONSERVANCY, 2029 K Street, NW Washington, DC 20006, <br><br> Plaintiffs, <br><br> v. <br><br> CARLOS M. GUTIERREZ, Secretary of Commerce U.S. Department of Commerce 14th Street & Constitution Avenue, NW Washington, DC 20230, <br><br> WILLIAM T. HOGARTH, NOAA Assistant Administrator for Fisheries National Marine Fisheries Service 1315 East-West Highway Silver Spring, MD 20910, <br><br> Defendants. | No. _____ <br><br><br> Case Number <br><br> Judge: |

## COMPLAINT FOR DECLARTORY AND INJUNCTIVE RELIEF

1.  This case challenges the National Oceanic and Atmospheric Administration National Marine Fisheries Service's ("NOAA Fisheries") failure to comply with a strict statutory deadline established by the Marine Mammal Protection Act ("MMPA"). 16 U.S.C. §§ 1362–1421h. This deadline, requiring the issuance of a final amended Atlantic Large Whale Take Reduction Plan ("ALWTRP") and implementing regulations "[n]ot later than <u>60 days</u> after the close of the comment period" for the proposed amended plan and implementing regulations, 16


U.S.C. § 1387(f)(7)(C), (8)(C), is part of a comprehensive regulatory scheme intended to protect marine mammals from being captured and killed in commercial fishing operations.

2. NOAA Fisheries must issue the amended ALWTRP in order to protect three endangered whale species – the North Atlantic right whale (*Eubalaena glacialis*), the humpback whale (*Megaptera novaeangliae*), and the fin whale (*Balaenoptera physalus*) – from serious injury or death resulting from entanglement in commercial fishing gear. 16 U.S.C. § 1387(f). Each of these species is listed as endangered under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544, and therefore legally protected by both the ESA and the MMPA.

3. Despite publishing a proposed rule for the amended ALWTRP and implementing regulations in June 2005, with a comment period that closed in August 2005, NOAA Fisheries has ignored the MMPA's 60-day statutory deadline that passed nearly 17 months ago. In this action, Plaintiffs seek to compel NOAA Fisheries to issue the final ALWTRP and its implementing regulations because the agency's failure to do so constitutes an action "unlawfully withheld" under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–706.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States," and 28 U.S.C. § 1361, which grants the district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

5. Venue in this Court is proper under 28 U.S.C. § 1391(e).

## PARTIES

6. Plaintiff The Humane Society of the United States ("The HSUS") is a non-profit organization headquartered in Washington, DC. The HSUS is the nation's largest animal protection organization, with nearly 10 million members and constituents, including 588,995 members who reside in the Eastern Seaboard states. The HSUS is committed to the goals of protecting, conserving, and enhancing the nation's wildlife and wildlands, and fostering the humane treatment of all animals. In furtherance of these goals and objectives, The HSUS and its members have demonstrated a strong interest in the preservation, enhancement, and humane treatment of marine mammals, including the North Atlantic right whale, the humpback whale, and the fin whale. The HSUS has served as a member of the Atlantic Large Whale Take Reduction Team since its inception in 1996, actively participating in efforts to protect these species from entanglement in fishing gear through the development of the Atlantic Large Whale Take Reduction Plan and other marine mammal protection measures.

7. The HSUS brings this action on behalf of its members, who regularly engage in and will continue to engage in educational, recreational, and scientific activities in North Atlantic right whale, humpback whale, and fin whale habitat. These members enjoy looking for, sighting, and observing these rare species in their natural habitats, and the members plan to continue to observe these species in the future. The members' interests in observing, studying, and appreciating these species are injured by NOAA Fisheries's failure to comply with the MMPA and APA because, by violating these statutes, the agency is contributing to the depletion of North Atlantic right whales, humpback whales, and fin whales due to entanglement in commercial fishing gear. The HSUS believes that the issuance of the final amended ALWTRP will help to

protect and assist in the recovery of the endangered whale populations that The HSUS's members enjoy observing.

8.  Plaintiff The Ocean Conservancy is a non-profit science-based environmental advocacy organization with approximately 170,000 members, including over 52,000 residing in states that border the Atlantic Ocean. The Ocean Conservancy is dedicated to protecting marine wildlife species, including Atlantic large whales such as the North Atlantic right whale, humpback whale, and fin whale, and their habitats, and to conserving coastal and ocean resources. To further its goals, The Ocean Conservancy conducts policy-oriented research, promotes public awareness, education, and citizen involvement in the conservation of marine wildlife and their habitats, and supports domestic and international programs for the protection of these resources. The Ocean Conservancy has served as a member of the Atlantic Large Whale Take Reduction Team since its inception in 1996, actively participating in efforts to protect these species from entanglement in fishing gear through the development of the Take Reduction Plan and other marine mammal protection measures.

9.  The Ocean Conservancy brings this suit on behalf of its members, many of whom enjoy observing, photographing, and appreciating Atlantic large whales in the wild, and studying these species in their natural habitat. The interests of The Ocean Conservancy's members in studying and otherwise enjoying Atlantic large whales and their habitat are harmed by NOAA Fisheries' failure to revise the Atlantic Large Whale Take Reduction Plan to address the serious injury and mortality of these species due to entanglement in commercial fishing gear.

10.  Defendant Carlos M. Gutierrez is the Secretary of Commerce and has ultimate responsibility for the programs of NOAA Fisheries. Secretary Gutierrez is sued in his official capacity.

4

11. Defendant William T. Hogarth is the Assistant Administrator for Fisheries at NOAA Fisheries, the agency within the Department of Commerce that has been delegated the responsibility for implementing the MMPA. Mr. Hogarth is sued in his official capacity.

12. Collectively, Defendants named in paragraphs 10 and 11 above shall be referred to as "Defendants" or "NOAA Fisheries" in this Complaint.

## STATUTORY BACKGROUND

13. Recognizing that "certain species and population stocks of marine mammals are, or may be, in danger of extinction or depletion as a result of man's activities," Congress passed the MMPA in 1972 to ensure that marine mammals are "protected and encouraged to develop to the greatest extent feasible . . . to maintain the health and stability of the marine ecosystem." 16 U.S.C. § 1361(1), (6). Preventing marine mammal stocks from falling below their "optimum sustainable population" levels, defined as the "number of animals which will result in the maximum productivity of the population or the species, keeping in mind the carrying capacity of the habitat and the health of the ecosystem of which they form a constituent element," id. §§ 1361(2), 1362(9), is a central tenant of the MMPA.

14. To promote these objectives, the MMPA establishes a variety of specific protections. The statute broadly prohibits the unauthorized "take" of any marine mammal. Id. § 1371(a)(1). The Act defines "take" as "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." Id. § 1362(13).

15. Take of marine mammals incidental to commercial fishery operations is governed by a comprehensive regulatory structure that focuses both on the rate of marine mammal take in a particular fishery, and the status of the marine mammal populations being taken. Id. § 1387(a)(1).

5

16. Specifically, section 118 of the MMPA sets up a registration and authorization scheme in which the Secretary must publish a list of fisheries that cause "frequent" or "occasional" mortality and serious injury to marine mammals. Id. § 1387(c)(1)(A)(i), (ii). These fisheries are identified as Category I and II fisheries, respectively. The list of fisheries also includes those with "remote likelihood of or no known" mortality or serious injury, and these are identified as Category III fisheries. Each owner of a fishing vessel who engages in a Category I or II commercial fishery must seek NOAA Fisheries's authorization to be exempt from the MMPA's marine mammal take prohibition. Id. § 1387(c)(2)(A). Additionally, each owner must comply with reporting requirements and any "applicable take reduction plan and emergency regulations" established by the Secretary in order to protect certain marine mammal species. Id. § 1387(c)(3)(A)(iii), (iv).

17. To assist in the recovery or to prevent the depletion of strategic stocks which interact with Category I or II commercial fisheries, the MMPA requires that NOAA Fisheries "shall develop and implement a take reduction plan" ("TRP"). 16 U.S.C. § 1387(f)(1). The MMPA defines "strategic stock" as a marine mammal stock "(A) for which the level of direct human-caused mortality exceeds the potential biological removal level; (B) which . . . is declining and is likely to be listed as a threatened species under the Endangered Species Act . . . within the foreseeable future; or (C) which is listed as a threatened species or endangered species under the Endangered Species Act . . ., or is designated as depleted under this chapter." Id. § 1362(19).

18. The "immediate goal" of a TRP is "to reduce, within 6 months of its implementation, the incidental mortality or serious injury of marine mammals incidentally taken in the course of commercial fishery operations to levels less than the potential biological removal

6

level." Id. § 1387(f)(2). The "potential biological removal" ("PBR") level is defined as "the maximum number of animals, not including natural mortalities, that may be removed from a marine mammal stock while allowing that stock to reach or maintain its optimum sustainable population." Id. § 1362(20). The long-term goal of a TRP is, within 5 years of implementation, to reduce such levels of "mortality or serious injury" even further, "to insignificant levels approaching a zero mortality and serious injury rate."

19. To assist in the development of a TRP for a particular marine mammal strategic stock, NOAA Fisheries must establish a take reduction team, consisting of experts in conservation, biology, and fishing practices. Id. § 1387(f)(6)(A)(i), (ii), (f)(6)(C).

20. In order to expedite the issuance of a TRP for strategic stocks, the MMPA establishes strict deadlines for the development, proposal, issuance, and amendment of TRPs. 16 U.S.C. § 1387(f)(7). Specifically, for each strategic stock where human-caused mortality or serious injury equals or exceeds the PBR level, the take reduction team "shall submit a draft [TRP]" for the stock to the Secretary within 6 months after the team is established. Id. § 1387(f)(7)(A)(i). Within 60 days after the team submits the draft TRP, the Secretary shall publish the proposed TRP and implementing regulations in the Federal Register. Id. § 1387(f)(7)(B)(i). If the team fails to submit a draft TRP within the required timeframe, the "Secretary shall, not later than 8 months after the establishment of the team," publish a proposed TRP and implementing regulations. Id. § 1387(f)(7)(B)(ii). Finally, "[n]ot later than 60 days after the close of the comment period [on the proposed TRP and implementing regulations], the Secretary shall issue a final [TRP] and implementing regulations." Id. § 1387(f)(7)(C) (emphasis added). For each strategic stock where human-caused mortality or serious injury is below the PBR level, the MMPA sets slightly different but comparable deadlines. See id. § 1387(f)(8). The 60-day

7

deadline for publication of a final TRP and implementing regulations is identical for stocks above and below PBR. Id. § 1387(f)(8)(C).

21. If any amendment of the TRP or the implementing regulations is "necessary to meet the requirements" of the MMPA to reduce take to PBR within the statutory timeframes, such amendments "shall . . . [be] in accordance with the procedures . . . for the issuance of such plans and regulations." Id. § 1387(f)(7)(F), (f)(8)(F).

22. The Administrative Procedure Act ("APA") authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

## FACTUAL BACKGROUND

### A. Entanglement of Atlantic Large Whales in Fishing Gear

23. The North Atlantic right whale, the humpback whale, and the fin whale are each endangered species impacted by several commercial fisheries operating along the East Coast of the United States. The biggest threat to these species from fishery operations is entanglement in fishing gear. Although entanglement can result in immediate death from drowning, in a large number of cases, animals die over a protracted period of time as they become debilitated by injuries or infections caused by the entanglement. In the case of North Atlantic right whales, of 17 right whales entangled since 1986 that did not manage to shed the entangling fishing gear, the average time until death was at least 10 months. Gear often wraps their flippers, mouths, and tail and, particularly in growing animals, cinches tighter over time. Such injury often results in major tissue and bone damage and systemic infection. During this time the animals often lose weight, causing them to sink when dead so that death from entanglement is often under-reported as a cause of death. Scientists consider fishing gear entanglement to be a major animal welfare issue for endangered whales.

8

24. The Western Atlantic stock of the North Atlantic right whale, the Gulf of Maine stock of the humpback whale, and the Western North Atlantic Stock of the fin whale have all been determined to be "strategic stocks" that interact with Category I or II commercial fisheries under the MMPA, and are therefore required to receive the protection of a TRP. The North Atlantic right whale and the humpback whale are strategic stocks because direct human-caused mortality and serious injury exceeds the PBR level for those species, and both species are listed as endangered under the Endangered Species Act. 16 U.S.C. § 1362(19)(A), (C). The fin whale is a strategic stock because it is also listed as endangered, although NOAA Fisheries estimates mortality and serious injury to be below PBR for this species. Id. § 1362(19)(C).

25. The North Atlantic right whale is a critically endangered species, with a population of only approximately 300 individuals. The whales are distributed along the East Coast of the United States from Canada south to Florida. The right whale has been listed as endangered since 1970, but the population has not recovered despite the legal protections it has been afforded. 35 Fed. Reg. 8495 (June 2, 1970). In fact, NOAA Fisheries has concluded that the "loss of even a single individual may contribute to the extinction of the species." 69 Fed. Reg. 30,857, 30,858 (June 1, 2004). As such, the PBR level, or maximum number of marine mammals that may be removed from a stock while allowing the stock to reach its optimum sustainable population, for North Atlantic right whales is zero.

26. The NOAA Fisheries 2005 U.S. Atlantic and Gulf of Mexico Marine Mammal Stock Assessment identified entanglement in commercial fishing gear as a major factor retarding growth and recovery of the North Atlantic right whale population. Since 2002, at least 6 right whales (right whale catalog #3107, #1815, #3210, #2240, #2301, and a right whale calf too young to receive a catalog number) were seriously injured or killed as a result of entanglement in

commercial fishing gear. NMFS has determined that right whale #3107 died due to entanglement in TRP compliant gear.

27. The humpback whale is also an endangered species. Humpback whales spend their summers feeding near the Northeast coast of the United States, including the Gulf of Maine. Although most humpbacks migrate to the West Indies for mating and calving during the winter, numerous humpbacks have recently been sighted off the coast of the mid-Atlantic and Southeastern states. NOAA Fisheries estimates the Gulf of Maine humpback whale population to be as low as 647 whales, and the agency has set the PBR for this humpback stock at only 1.3 whales per year. Annual serious injuries and mortalities of humpbacks are estimated at 3.8 animals per year, which is almost 3 times the PBR. See NOAA Fisheries 2005 Stock Assessment for the Gulf of Maine Stock. The 2005 Stock Assessment notes that anthropogenic impacts, including both ship strikes and fishing gear entanglements, may be slowing the humpback whale's recovery.

28. The 2005 Stock Assessment estimates that at least 9 humpback whales have been seriously injured or killed as a result of fishing gear entanglement since 2002. The NOAA Fisheries Draft 2007 Stock Assessment identifies 2 additional humpbacks that suffered serious injury or death as a result of entanglement in 2004. In addition, NOAA Fisheries-funded disentanglement response teams reported 3 more humpback whales as "seriously injured" in 2006 that have not yet been included in NOAA Fisheries's Stock Assessments.

29. The fin whale, whose population ranges from Nova Scotia to Cape Hatteras along the East Coast of the United States, is listed as endangered. NOAA Fisheries estimates its population to be roughly 2,350 whales. See NOAA Fisheries 2005 Stock Assessment for the Western North Atlantic Stock. Although NOAA Fisheries estimates serious injury and mortality

to be 1.4 animals per year, which is below PBR for this species, NOAA Fisheries admits that the total level of human-caused serious injury or mortality is unknown. NOAA Fisheries's proposed Recovery Plan for the fin whale recommends that further information be collected on the threat posed by fishery-related entanglement. Indeed, NOAA Fisheries's 2005 Stock Assessment identifies one fin whale, and the Draft Stock Assessment for 2007 identifies 2 additional fin whales, that have been seriously injured or killed as a result of entanglement since 2002.

### B. History of Failed Attempts to Comply with the MMPA and Protect Atlantic Large Whales from Fishing Gear Entanglement

30.   Because populations of the North Atlantic right whales, humpbacks, and fin whales that inhabit the East Coast of the United States are strategic stocks taken by Category I and II commercial fisheries under section 118 of the MMPA, NOAA Fisheries convened the Atlantic Large Whale Take Reduction Team in August of 1996. The team was tasked with developing the Atlantic Large Whale TRP ("ALWTRP"), which would reduce takes to PBR for all three strategic stocks. The team did not reach consensus, but submitted a non-consensus report to NOAA Fisheries in 1997. NOAA Fisheries proposed the ALWTRP in the form of an interim rule in July of 1997, and issued a final plan in February of 1999. 62 Fed. Reg. 39,157 (July 22, 1997); 64 Fed. Reg. 7529 (Feb. 16, 1999). This plan required specific gear modifications and limited time and area closures and purported to meet the requirements of the MMPA. Id.

31.   In 2002, it became apparent that NOAA Fisheries's ALWTRP was failing to achieve the requirements of the MMPA. In July of 2002, a female right whale (right whale #3107) was discovered entangled in fishing gear that was compliant with NOAA Fisheries' TRP. This entanglement resulted in her death later that year. See 70 Fed. Reg. 35,894, 35,895 (June 21, 2005). Specifically, the gear recovered from right whale #3107 contained a "weak link with a

11

breaking strength of no more than 600 lb (272.4 kg)." Id. This type of gear modification is explicitly required under the current, unamended ALWTRP, but nonetheless resulted in the death of right whale #3107.

32. NOAA Fisheries admitted in an April 2003 Take Reduction Team meeting that, because of this death, the ALWTRP required revision. Although the team was tasked with developing a draft amended ALWTRP, the team was again not able to reach consensus. NOAA Fisheries failed to propose TRP amendments until June of 2005, well after the statutory deadline established by the MMPA. 16 U.S.C. § 1387(f)(7)(B)(ii), (f)(8)(B)(ii); 70 Fed. Reg. 35,894, 35,895 (June 21, 2005).

33. The comment period on the proposed ALWTRP amendments closed on August 22, 2005. 70 Fed. Reg. 40,301 (July 13, 2005). Despite the MMPA's requirement that "[n]ot later than 60 days after the close of the comment period . . . the Secretary shall issue a final [TRP] and implementing regulations," 16 U.S.C. § 1387(f)(7)(C), (f)(8)(C) (emphasis added), NOAA Fisheries has still failed to finalize the TRP amendments.

## PLAINTIFFS' CLAIMS FOR RELIEF

### Violations of the MMPA and the APA

34. Plaintiffs incorporate herein by reference all of the allegations contained in paragraphs 1–32 above.

35. By failing to issue the final amended ALWTRP and implementing regulations within 60 days after the close of the comment period on the proposed amended ALWTRP and its implementing regulations, NOAA Fisheries has violated statutory deadline provided in section 118(f)(7)(C) and (f)(8)(C). 16 U.S.C. § 1387(f)(7)(C), (f)(8)(C). NOAA Fisheries's failure to

issue the amended TRP and implementing regulations within the statutory deadline constitutes an agency action "unlawfully withheld" under the APA. 5 U.S.C. § 706(1).

36.   Defendants' actions have injured, and will continue to injure, Plaintiffs in the manner described in paragraphs 6–9 above.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter an order:

1. declaring Defendants' failure to comply with statutory deadlines established in the Marine Mammal Protection Act, 16 U.S.C. §§ 1362–1421h, to be an "unlawfully withheld" agency action and thus in violation of the MMPA and the Administrative Procedure Act, 5 U.S.C. §§ 551–706;

2. compelling Defendants to issue the final amended ALWTRP and implementing regulations immediately;

3. awarding Plaintiffs their reasonable attorneys' fees and costs for this action; and

4. granting Plaintiffs such other and further relief as may be just and proper.

Respectfully Submitted,

Jonathan Lovvorn
DC Bar No. 461163

Sarah Uhlemann
DC Bar No. 501328

The Humane Society of the United States
2100 L Street, N.W.
Washington, DC 20037
(202) 676-2334

_____
Sierra B. Weaver
DC Bar No. 488560
Coby Dolan
DC Bar No. 483237
The Ocean Conservancy
2029 K Street, NW
Washington, DC 20006
(202) 351-0478

*Attorneys for Plaintiffs*

February 12, 2007

**JS-44**
**(Rev.1/05 DC)**

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

**DEFENDANTS**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

1  U.S. Government Plaintiff
3  Federal Question (U.S. Government Not a Party)
2  U.S. Government Defendant
4  Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### A. *Antitrust*

410 Antitrust

### B. *Personal Injury/Malpractice*

310 Airplane
315 Airplane Product Liability
320 Assault, Libel & Slander
330 Federal Employers Liability
340 Marine
345 Marine Product Liability
350 Motor Vehicle
355 Motor Vehicle Product Liability
360 Other Personal Injury
362 Medical Malpractice
365 Product Liability
368 Asbestos Product Liability

### C. *Administrative Agency Review*

151 Medicare Act

**Social Security:**
861 HIA ((1395ff)
862 Black Lung (923)
863 DIWC/DIWW (405(g)
864 SSID Title XVI
865 RSI (405(g)
**Other Statutes**
891 Agricultural Acts
892 Economic Stabilization Act
893 Environmental Matters
894 Energy Allocation Act
890 Other Statutory Actions (If Administrative Agency is Involved)

### D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### E. *General Civil (Other)* OR F. *Pro Se General Civil*

**Real Property**
210 Land Condemnation
220 Foreclosure
230 Rent, Lease & Ejectment
240 Torts to Land
245 Tort Product Liability
290 All Other Real Property

**Personal Property**
370 Other Fraud
371 Truth in Lending
380 Other Personal Property Damage
385 Property Damage Product Liability

**Bankruptcy**
422 Appeal 28 USC 158
423 Withdrawal 28 USC 157

**Prisoner Petitions**
535 Death Penalty
540 Mandamus & Other
550 Civil Rights
555 Prison Condition

**Property Rights**
820 Copyrights
830 Patent
840 Trademark

**Federal Tax Suits**
870 Taxes (US plaintiff or defendant
871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
610 Agriculture
620 Other Food &Drug
625 Drug Related Seizure of Property 21 USC 881
630 Liquor Laws
640 RR & Truck
650 Airline Regs
660 Occupational Safety/Health
690 Other

**Other Statutes**
400 State Reapportionment
430 Banks & Banking
450 Commerce/ICC Rates/etc.
460 Deportation

470 Racketeer Influenced & Corrupt Organizations
480 Consumer Credit
490 Cable/Satellite TV
810 Selective Service
850 Securities/Commodities/ Exchange
875 Customer Challenge 12 USC 3410
900 Appeal of fee determination under equal access to Justice
950 Constitutionality of State Statutes
890 Other Statutory Actions (if not administrative agency review or Privacy Act

| G. *Habeas Corpus/ 2255*                                      | H. *Employment Discrimination*                                                                                                                  | I. *FOIA/PRIVACY ACT*                                                                 | J. *Student Loan*                                               |
| ------------------------------------------------------------- | ----------------------------------------------------------------------------------------------------------------------------------------------- | ------------------------------------------------------------------------------------- | --------------------------------------------------------------- |
| 530 Habeas Corpus-General<br>510 Motion/Vacate Sentence       | 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | 895 Freedom of Information Act<br>890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | 152 Recovery of Defaulted Student Loans (excluding veterans)    |

| K. *Labor/ERISA (non-employment)*                                                                                                                                  | L. *Other Civil Rights (non-employment)*                                                                                                                                 | M. *Contract*                                                                                                                                                                                                                                                        | N. *Three-Judge Court*                                       |
| ------------------------------------------------------------------------------------------------------------------------------------------------------------------ | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------ | -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ------------------------------------------------------------ |
| 710 Fair Labor Standards Act<br>720 Labor/Mgmt. Relations<br>730 Labor/Mgmt. Reporting & Disclosure Act<br>740 Labor Railway Act<br>790 Other Labor Litigation<br>791 Empl. Ret. Inc. Security Act | 441 Voting (if not Voting Rights Act)<br>443 Housing/Accommodations<br>444 Welfare<br>440 Other Civil Rights<br>445 American w/Disabilities-Employment<br>446 Americans w/Disabilities-Other | 110 Insurance<br>120 Marine<br>130 Miller Act<br>140 Negotiable Instrument<br>150 Recovery of Overpayment & Enforcement of Judgment<br>153 Recovery of Overpayment of Veteran's Benefits<br>160 Stockholder's Suits<br>190 Other Contracts<br>195 Contract Product Liability<br>196 Franchise | 441 Civil Rights-Voting (if Voting Rights Act)               |

## V. ORIGIN

- 1 Original Proceeding
- 2 Removed from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from another district (specify)
- 6 Multi district Litigation
- 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23    **DEMAND $**    **JURY DEMAND:**    Check YES only if demanded in complaint    **YES**    **NO**

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    **YES**    **NO**    If yes, please complete related case form.

**DATE**            **SIGNATURE OF ATTORNEY OF RECORD**

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

- **I.** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

- **III.** CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

- **IV.** CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

- **VI.** CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

- **VIII.** RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.