UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES and THE OCEAN CONSERVANCY, <br><br> Plaintiffs, <br><br> v. <br><br> CARLOS M. GUTIERREZ, et. al., <br><br> Defendants. | Civ. No. 1:07-cv-00333-ESH |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE
MAINE LOBSTERMEN'S ASSOCIATION'S MOTION TO INTERVENE**

This case challenges the National Oceanic and Atmospheric Administration National Marine Fisheries Service's ("NOAA Fisheries") failure to comply with a strict statutory deadline under the Marine Mammal Protection Act ("MMPA"), which required the issuance of a final amended Atlantic Large Whale Take Reduction Plan ("ALWTRP") and implementing regulations not later than October 21, 2005. Complaint ¶ 35. The purpose of the plan is to protect three critically endangered whales from death and injury caused by entanglement in commercial fishing gear. 70 Fed. Reg. 35,893, 35,894 (June 21, 2005).

The Maine Lobstermen's Association ("MLA") has now moved to intervene in this straightforward deadline suit. However, rather than address the claim Plaintiffs have presented, the MLA instead devotes the entirety of its briefing to substantive issues that are beyond the scope of the current litigation. Because the MLA has not demonstrated a concrete interest in the narrow legal issue before the Court, but instead seeks to interject hypothetical harms from a potential agency rule that has not even been issued, the MLA fails to meet the standards for

1

intervention of right in the D.C. Circuit. If the MLA is allowed permissive intervention pursuant to Rule 24(b), Plaintiffs ask the Court to limit the MLA's participation to the narrow issues raised in Plaintiffs' Complaint.

## **BACKGROUND**

In 1994, to further the Marine Mammal Protection Act's goal of ensuring that marine mammals are "protected and encouraged to develop to the greatest extent feasible," 16 U.S.C. § 1361(6), Congress added a specific provision to the Act to regulate the interactions between marine mammals and U.S. commercial fisheries. Section 118 requires NOAA Fisheries to develop, propose, and implement a "take reduction plan" for each "strategic stock" of marine mammals that is "frequently" or "occasionally" killed from interactions with commercial fisheries. 16 U.S.C. § 1387(f)(7)(C), (8)(C).

Each take reduction plan developed pursuant to Section 118 must have the "immediate goal" of reducing serious injuries and mortalities of marine mammals from commercial fisheries to levels that will allow the affected stocks to reach or maintain their optimum sustainable population levels within 6 months of plan implementation, and to levels approaching a zero mortality and serious injury rate within 5 years implementation. 16 U.S.C. § 1387(f)(2). To meet these goals, the MMPA sets firm deadlines for the development, proposal, finalization, and amendment of take reduction plans. Specifically, for a marine mammal stock for which fisheries-related injury or mortality exceeds the stock's "potential biological removal" rate, such as the humpback and North Atlantic right whales involved in this lawsuit, the MMPA provides NOAA Fisheries up to 8 months to develop and propose a take reduction plan and implementing regulations. 16 U.S.C. § 1387(f)(7)(B). Section 118 then expressly requires the agency to publish a final take reduction plan and implementing regulations "[n]ot later than 60 days after

2

the close of the comment period" for the proposed plan. Id. § 1387(f)(7)(C), (8)(C). Any amendments to a take reduction plan must comply with the same strict deadlines required for plan development. Id. § 1387(f)(7)(F), (8)(F).

In 1997, NOAA Fisheries issued the Atlantic Large Whale Take Reduction Plan ("ALWTRP") as a comprehensive plan to reduce the serious injury and mortality of endangered fin, humpback, and North Atlantic right whales from entanglement in gear used by U.S. commercial fisheries that operate in the Atlantic Ocean. See generally 70 Fed. Reg. 35,893, 35,894 (June 21, 2005) (listing the 5 fisheries spanning the U.S. East Coast currently regulated under the existing ALWTRP, and an additional 8 fisheries NOAA Fisheries has proposed to regulate under the plan). In response to the entanglement-related death of right whale #3107 in 2002, NOAA Fisheries determined that the existing ALWTRP is inadequate and published a Proposed Rule in June 2005 to "revise the management measures . . . in commercial fisheries to meet the goals of the [MMPA] and the Endangered Species Act (ESA)." Id.; see also Defendants' Answer ¶¶ 31–32 (admitting failure of the plan in 2002 and that revision was required). Pursuant to the deadlines set in MMPA Section 118, 16 U.S.C. § 1387(f)(7)(C), (8)(C), NOAA Fisheries was required to issue a final amended ALWTRP and implementing regulations "[n]ot later than 60 days after the close of the comment period" for the proposed plan and implementing regulations. This deadline passed on October 21, 2005.

Plaintiffs brought this suit in February 2007, nearly 17 months past the MMPA's deadline, in an attempt to restart a stalled regulatory process. There is no dispute that the MMPA deadline is non-discretionary, and that NOAA Fisheries failed to meet it. Plaintiffs seek declaratory relief to this effect, as well as an Order for Defendants to immediately issue a final rule as required by Section 118. 16 U.S.C. § 1387(f)(7)(C), (8)(C); Complaint at 13. Plaintiffs

have made no claims regarding the substance of this pending rule, nor could they since any such claims would not be ripe for review.

Despite the limited scope of this proceeding, the MLA has now moved to intervene, alleging that the MLA's "interest in this case involves the potential imposition of new regulatory requirements on [ ] fishing gear, in particular, the ropes that connect a string lobster, or 'groundlines.'" MLA Intervention Memorandum ("Interv. Memo.") at 2. Since this substantive regulatory issue is not before the Court, Plaintiffs oppose intervention of right, and request that if permissive intervention is granted, it be limited to the claims presented in Plaintiffs' Complaint.

## DISCUSSION

### I. Intervention of Right

In order to qualify for intervention of right, the applicants must meet four requirements: (1) the application must be timely; (2) the applicant must have an interest relating to the transaction that is the subject of the action; (3) the applicant must be so situated that a disposition of the action may impair or impede its ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties to the action. Bldg. & Constr. Trades Dep't, AFL-CIO v. Reich, 40 F.3d 1275, 1282 (D.C. Cir. 1994). In addition, in this Circuit, the applicant must demonstrate Article III standing. Fund For Animals, Inc. v. Norton, 322 F.3d 728, 732–33 (D.C. Cir. 2003). The absence of any one factor is fatal to an application for intervention. Jones v. Prince George's County, 348 F.3d 1014, 1019 (D.C. Cir. 2003).

The MLA fails to meet prongs two and three of the test for intervention because it has confused the "interest" a proposed intervenor must have in the issues presented in the current litigation in order to intervene under Rule 24, with the MLA's interest in the new issues it impermissibly seeks to interject into this action that are not yet ripe for review. See Wash. Elec. v. Mass. Mun. Wholesale Elec., 922 F.2d 92, 97 (2d Cir. 1990) (would-be intervenors are not

4

permitted to create "whole new suits" by "interject[ing] collateral issues into an existing action"); Forest Conservation Council v. U.S. Forest Serv., 66 F.3d 1489, 1493 (9th Cir. 1995) (applicant must demonstrate both a legally protected interest and a "relationship between [that] interest and the claims at issue").

The lawsuit currently before this Court is limited to the narrow question of whether NOAA Fisheries has "unlawfully withheld" its non-discretionary duty to issue a final ALWTRP and implementing regulations by October 21, 2005, pursuant to 16 U.S.C. § 1387(f)(7)(C), (8)(C). 5 U.S.C. § 706(1); see Complaint ¶ 35. The MLA does not, nor can it, demonstrate a legal interest in preventing the agency from complying with a mandatory statutory deadline. As several courts have noted, applicants for intervention simply have no legally protectable interest in a court-mandated rulemaking timetable which "would be similar to the rulemaking schedule" prescribed by statute. Am. Lung Ass'n v. Reilly, 141 F.R.D. 19, 22 (E.D.N.Y. 1992), aff'd 962 F.2d 258 (2d Cir. 1992); see also Envtl. Def. v. Leavitt, 329 F. Supp. 2d 55, 68 (D.D.C. 2004) (denying intervention in deadline case because industry-applicant failed to show how the timing of issuance of final rule would cause applicant's concrete injury or impairment).[1] Given these circumstances, there is simply no merit to the MLA's assertion that its members are "the real targets of the suit." MLA Interv. Memo. at 13. The MLA fails the second prong of the test for intervention because it does not have an interest in the case currently before this Court.

---

[1] Cases cited by the MLA are not to the contrary. In CLF v. Mosbacher, the plaintiff challenged a final fisheries regulation and agreed to a consent decree establishing a timetable for development of a new plan. 966 F.2d 39 (1st Cir. 1992). The court allowed fishery groups to intervene because the agency "was not bound by any timetable to adopt new amendments, nor . . . to develop any plan to prevent overfishing." Id. at 44. Unlike the current case where NOAA Fisheries has a non-discretionary duty to issue a rule within a specified time frame, the fishery groups in CLF had an interest in stopping the new plan from being developed in first place. Id.; see also Natural Res. Def. Council v. Costle, 561 F.2d 904, 910 (D.C. Cir. 1977) (finding intervenors had an interest in consent decree that allowed special rights to parties, including the first opportunity to review and discuss rulemaking exclusions and timing changes).

Indeed, the only interest the MLA has articulated in its Motion to Intervene is an interest in the substance of the <u>final rule</u> NOAA Fisheries may eventually issue. <u>See</u> Interv. Memo. at 2 ("MLA's interest in this case involves the potential imposition of new regulatory requirements on fishing gear . . ."). The MLA has failed to demonstrate how NOAA Fisheries' timing in issuing the final rule – the <u>only</u> claim involved in this case – will "impair or impede" the MLA's ability to protect its interest in the substance of that final rule, as required by the third prong of the intervention test. FED. RULE CIV. P. 24(a)(2). Nor has the MLA demonstrated that prompt issuance of the final rule will somehow result in the agency failing to fully consider MLA's position or that the agency already taking 20 months to consider public comment on the Proposed Rule – 10 times the amount of time allowed by the statute – will somehow be inadequate. <u>See</u> <u>Cronin v. Browner</u>, 898 F. Supp. 1052, 1063 (S.D.N.Y. 1995) (denying intervention because applicant could not offer evidence that agency would not take its views into account in the upcoming rulemaking); <u>see</u> <u>also</u> <u>Envtl. Def. v. Leavitt</u>, 329 F. Supp. 2d 55, 68 (D.D.C. 2004) (denying intervention because applicant failed to show that consent decree's timetable was inadequate or how any such inadequacies would impair applicant's interest).

Further, the MLA had the opportunity to submit comments on the proposed ALWTRP, and the MLA will have the opportunity to challenge the substance of the final rule once it is issued. In <u>Alternative Research & Dev. Found. v. Glickman</u>, this Court denied intervention to an industry-applicant in a case involving a petition for rulemaking under the APA. No. 99-581 (D.D.C. Oct. 10, 2000) (order denying intervention). The D.C. Circuit affirmed the denial of intervention because the parties' stipulated dismissal requiring initiation of rulemaking did not "impair" the industry-applicant's interests. 262 F.3d 406, 411 (D.C. Cir. 2001). The applicant was not precluded from commenting on or later challenging the resulting regulation, and the

court noted that the stipulated dismissal did not "bind the agency in its rulemaking." Id. Similarly, the MLA has had – and once the final rule is issued it will again have – an opportunity to protect its interest in the substance of the rule. This straightforward deadline case will not "impair or impede" the MLA's ability to protect that interest.

Further, it is axiomatic that the MLA's proposed injuries cannot possibly ripen into a justiciable claim until and unless this Court orders NOAA Fisheries to publish a final rule and the agency decides to issue exactly the rule the MLA claims will injure them. See Util. Air Regulatory Group v. EPA, 320 F.3d 272, 279 (D.C. Cir. 2003) (finding industry challenge not "ripe" for review because EPA was then undertaking a rulemaking to amend its rule). Plaintiffs have not asked the Court to order implementation of the June 2005 Proposed Rule with which the MLA is apparently so concerned, but rather that the Court order expeditious issuance of *a* final rule as required by the MMPA, in whatever substantive form the agency chooses. Complaint ¶ 35.

For these reasons, the MLA also fails to demonstrate Article III standing sufficient to intervene, since the injuries asserted are conjectural and entirely hypothetical. The D.C. Circuit requires that an applicant for intervention demonstrate Article III standing, including an injury in fact – a harm suffered that is "actual or imminent, not conjectural or hypothetical." Fund For Animals, 322 F.3d at 732–33; Steel Co., 524 U.S. at 103. Neither Plaintiffs nor the MLA know what the final rule will be, nor can MLA divine the effects of a rule that has not yet been issued. For example, the MLA asserts that the relief Plaintiffs seek "could have very negative . . . effects . . . because it could end up requiring the Federal Defendant to issue regulations" adverse to the MLA's members' interests. Interv. Memo. at 4 (emphases added). Such allegations are not sufficient to demonstrate Article III standing. See Bear Lodge Multiple Use Ass'n v. Babbitt,

175 F.3d 814, 821–22 (10th Cir. 1999) (injury caused by potential closure of area to rock-climbing was not "imminent" because closure was just one of several options in agency's plan); GrassRoots Recycling Network, Inc. v. EPA, 429 F.3d 1109, 1113 (D.C. Cir. 2005) (plaintiff's "multi-tiered speculation" of injury was "neither actual nor imminent but wholly conjectural").

Because the MLA has neither demonstrated an interest in the litigation currently before this Court, nor demonstrated how this litigation could impair its ability to protect the MLA's interests, it fails both the requirements for intervention of right pursuant to Federal Rule 24(a) and for standing to intervene. We therefore request that the MLA's Motion to Intervene be denied.

## II.     **Permissive Intervention**

Should the Court permit the MLA to intervene pursuant to Rule 24(b), Plaintiffs request that the MLA's participation be limited in a way that does not frustrate the efficient administration of this case. Rule 24(b) allows intervention "when an applicant's claim or defense and the main action have a question of law or fact in common," and the court is directed to consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." FED. R. CIV. P. 24(b)(2); see also id. advisory committee's note (1966) (observing that intervention "may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings"); Forest Conservation Council v. United States Forest Serv., 66 F.3d at 1499 (granting limited intervention with conditions). As described in detail above, the applicant has no claim in common with Plaintiff, and even common issues of fact appear difficult to find because of the chasm between Plaintiffs' deadline claim and the substantive concerns of the MLA.

Accordingly, Plaintiffs request that the MLA's participation be limited to responding to the narrow claim alleged in Plaintiffs' Complaint – whether NOAA Fisheries' failure to meet the

8

MMPA's statutory deadline constitutes an action "unlawfully withheld" under the Administrative Procedure Act, 5 U.S.C. § 706(1). Because the MLA's moving papers suggest that the proposed intervenors may seek to complicate and delay this action with collateral issues and unnecessary paperwork, the imposition of reasonable restrictions on their participation in this action is clearly warranted.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the MLA's application for intervention of right pursuant to Federal Rule of Civil Procedure 24(a). Plaintiffs further request that, should the Court allow permissive intervention, this Court limit the MLA's participation to the specific issue set forth in Plaintiffs' Complaint.

Dated: April 30, 2007                                   Respectfully Submitted,


   /s/ Sarah Uhlemann   
Sarah Uhlemann
DC Bar No. 501328
Jonathan Lovvorn
DC Bar No. 461163
The Humane Society of the United States
2100 L Street, NW
Washington, DC 20037

*Attorneys for Plaintiff The Humane Society of the United States*

   /s/ Sierra B. Weaver   
Sierra B. Weaver
DC Bar No. 488560
Coby Dolan
DC Bar No. 483237
The Ocean Conservancy
2029 K Street, NW
Washington, DC 20006

*Attorneys for Plaintiff The Ocean Conservancy*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES and THE OCEAN CONSERVANCY,<br><br>Plaintiffs,<br><br>v.<br><br>CARLOS M. GUTIERREZ, et. al.,<br><br>Defendants. | Civ. No. 1:07-cv-00333-ESH |

**[PROPOSED] ORDER**

Upon consideration of the Motion to Intervene filed by the Maine Lobstermen's Association's ("MLA"), it is hereby ORDERED the MLA's Motion to Intervene is DENIED.

Dated: _____       _____
                                                                            Hon. Ellen S. Huvelle
                                                                            United States District Judge