IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE HONORABLE <br> CARLOS M. GUTIERREZ, *et al.* <br><br> Defendants. | ) ) ) ) ) ) ) ) Civ. No. 1:07-cv-00333-ESH ) ) ) ) ) ) ) |

**MAINE LOBSTERMEN'S ASSOCIATION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO INTERVENE**

Movant, the Maine Lobstermen's Association ("MLA"), respectfully submits this Reply Memorandum in support of its Motion to Intervene as of right under Fed. R. Civ. P. 24(a)(2) or, in the alternative, permissively under Fed. R. Civ. P. 24(b).

The Humane Society of the United States and the Ocean Conservancy (collectively, "Plaintiffs") brought this action to compel the National Marine Fisheries Service's ("NMFS") compliance with a statutory deadline within the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. §§ 1362-1421h, which Plaintiffs claim has passed.  Specifically, Plaintiffs are seeking the ***immediate*** issuance of a new regulation under 16 U.S.C. § 1361(6), (*see* Compl., Request for Relief, ¶ 2; *see also* Pl.s' Mem. in Opp'n to MLA's Mot. to Intervene ("Pl.s' Mem.") at 3), the aim of which Plaintiffs correctly characterize as "regulat[ing] the interactions between marine mammals and [the] U.S. commercial fisheries," in which each one of MLA's 1200 lobstermen members participates.  (*See* Pl.s' Mem. at 2.)

While on one hand, Plaintiffs concede that they are seeking the immediate imposition of a regulation that will affect the interactions of whales, other marine mammals, and commercial fisheries, they claim on the other that MLA – a commercial fishing association whose membership unquestionably will be subject to whatever regulation ultimately is passed – lacks an interest in this litigation. (*Compare* Pl.s' Br. at 2 *with id*. at 5-8.)  Plaintiffs' argument is without legal merit and contrary to basic principles of judicial efficiency.

## BACKGROUND

The regulation at issue in this case is in the final procedural stages of an extensive regulatory process. NMFS published a draft environmental impact statement ("DEIS") on February 25, 2005,[1] *see* 70 Fed. Reg. 9306 (Feb. 25, 2005), and issued a proposed rule on June 21, 2005. *See* 70 Fed. Reg. 35894 (June 21, 2005). Each document sets forth the same six alternative schemes, including two "preferred" alternatives, for new regulations to implement revisions to the Atlantic Large Whale Take Reduction Plan ("ALWTRP"). All six of the proposed alternatives, except for the "no action alternative," which would maintain the status quo, mandate significant gear modifications for the lobster fishery, in which MLA's members actively participate. Plaintiffs allege the no action alternative is illegal, and Defendant admitted as much. (*See* Compl. ¶ 32 (noting that "the ALWTRP required revision"); Answer ¶ 32**.**) Thus, new and stricter regulation is not truly "speculative," as Plaintiffs claim, as such will come to pass when this rulemaking is complete. (*See* Pl.s' Mem. at 7-8.)

Modifications to lobster fishing gear required by all the proposed alternatives (save for no action) will have severe negative economic impacts on MLA's members. (McCarron Dec. ¶¶ 27-34.) These mandatory modifications required under the alternatives involve extensive

---

[1] The text of the DEIS is available at www.nero.noaa.gov/nero/hotnews/whales/index.html (last visited May 4, 2007).

monetary outlays for the purchase of new fishing gear and cause substantial changes to their current fishing practices. (*See id.* ¶ 30.) Significantly, moreover, NMFS' two preferred alternatives – alternatives three and six in the DEIS – would eliminate the use of floating groundlines[2] in all but a small region of the Gulf of Maine. (*Id.* ¶ 27.) Floating groundlines are the industry standard and heavily utilized by MLA's members, and their elimination will cause severe economic harm, significantly decrease their gear's durability, and even compromise safety. (*Id.* ¶ 32-33.) MLA submitted detailed comments and participated in the relevant rulemaking process to state these concerns and present workable and effective alternatives. (*Id.* ¶¶ 11, 13-14, 16-21.)

The proposed rule currently is undergoing inter-agency review, before it is published as a final rule. Despite Plaintiffs' assertions to the contrary, (*see* Pl.s' Br. at 6), there are, in fact, no additional opportunities for MLA to provide public comment before NMFS issues the final rule. The comment period on this rule has closed.

## ARGUMENT

I.  **MLA SATISFIES THE TEST FOR INTERVENTION OF RIGHT BECAUSE IT HAS AN INTEREST IN THIS LITIGATION, AND THAT INTEREST WILL BE IMPAIRED WITHOUT MLA'S INVOLVEMENT**

As MLA identified in its opening brief, a movant for intervention as of right under Fed. R. Civ. P. 24(a)(2) must satisfy four criteria: (1) the motion to intervene must be timely ("timeliness"); (2) the movant must claim an interest relating to the subject of the action ("interest"); (3) the movant must be so situated that the disposition of the action, as a practical matter, may impair or impede the movant's ability to protect that interest ("impairment of

---

[2] Floating groundline consists of polypropylene line that is buoyant and causes the line to rise above the sea floor. In contrast, sinking groundline is made of non-buoyant material and it rests on the seafloor. Maine lobstermen use floating groundline in order to reduce the chafing of the gear and to prevent it from getting "hung down" on rocks and ledges. (*Id*. at ¶¶ 9, 29-30.)

**Reply Memorandum Supporting MLA's Motion to Intervene - Page 3**
DC01/GEHAS/281476.2

interest"); and (4) there must be a lack of adequate representation ("adequacy of representation"). *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998). "The D.C. Circuit has taken a liberal approach to intervention." *Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) (citing *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 910-911 (D.C. Cir. 1977)). It views the interest test as a "practical guide to disposing of lawsuits by involving as many apparently concerned parties as is compatible with efficiency and due process." *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981).

Plaintiffs assert that MLA has failed to meet the "interest" and "impairment of interest" prongs only; they do not challenge the timeliness of MLA's motion or the inadequacy of the existing parties to represent MLA's interest. As demonstrated in its initial brief and below, however, MLA has a palpable legal interest in this case and the disposition of the case without its involvement will impair and impede its ability to protect that interest.

To meet the second and third prongs, the "interest" and "impairment of interest" tests, MLA must show that it has a "legally protectable" interest related to the subject of this litigation and that interest is "at risk" without MLA's involvement. *See Mova Pharm.*, 140 F.3d at 1074, 1076. The cornerstone to Plaintiffs' argument is that MLA does not have a legal interest, much less one that will be impaired, in preventing NMFS from issuing an ***immediate*** final rule, which, regardless of its specific ultimate contents, undoubtedly will affect MLA's lobstermen members. (*See* Pl.s' Br. at 5-8.) Such argument is misplaced as a matter of law.[3]

---

[3] It bears noting that Plaintiffs mischaracterize what is at stake in this litigation. In their Complaint and at other points in their brief in opposition to intervention, Plaintiffs stress that they seek NMFS to issue a final rule "immediately." *See* Compl. at Prayer for Relief, ¶ 2; Pl.s' Mem. at 3 ("Plaintiffs seek . . . an Order for Defendants to immediately issue a final rule . . ."). Later in their brief, however, Plaintiffs assert that this litigation is nothing more than an action to compel agency action "with a mandatory statutory deadline." Pl.s' Br. at 5. Yet, as Plaintiffs claim, any alleged "mandatory statutory deadline" passed nearly seventeen months ago. *Id.* at 3.

**Reply Memorandum Supporting MLA's Motion to Intervene - Page 4**
DC01/GEHAS/281476.2

First, MLA members' ownership of state and federal fishing permits affecting the resource at issue in and of itself constitutes a legally protectable interest. *See Sierra Club v. EPA*, 995 F.2d 1478, 1482 (9th Cir. 1993) (holding that the City of Phoenix should have been granted intervention as of right because it held discharge permits that would be affected by the lawsuit); *Schwarz v. Town of Huntington Zoning Bd. of Appeals*, 191 F.R.D. 357, 359 (E.D.N.Y. 2000) (holders of special use permits had a "protectable property" interest sufficient to support intervention). As permit holders, MLA's members have a clear property and proprietary interest in this litigation, as any regulation that may issue as a result will have an effect on them in some concrete manner. Simply put, they are the entities that will be regulated by any new ALWTRP regulations. *See Jones v. Prince George's County, Maryland*, 348 F.3d 1014, 1017-18 (D.C. Cir. 2003) ("[I]ntervenors of right need only an 'interest' in the litigation.").

In *Conservation Law Foundation* ("*CLF*") *v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992), the First Circuit held that fishing groups were entitled to intervene as of right in a case brought by a public interest organization seeking the development and submission of proposed regulations aimed at eliminating over-fishing.[4] *Mosbacher*, 966 F.2d at 40 ("we determine that a regulated group has a sufficient interest to intervene as of right in a suit . . . seeking more extensive regulation by a federal agency."). The court acknowledged that the groups had a legally protectable interest because their members' "economic interests [would] be substantially affected" by the implementation of the consent decree and reasoned that "[t]he fishing groups seeking intervention are the real targets of the suit and are the subjects of the regulatory plan. Changes in the rule will affect the proposed intervenors' business, both immediately and in the

---

Regardless of how Plaintiffs may wish to characterize this suit, it is clear that they seek to "ram-rod" into place a final regulation that will have significant economic and other impacts on the United States lobster fishery, as well as many other findings.

[4]   Thus, *Mosbacher* was, in fact, a "deadline" case like the one at bar.

**Reply Memorandum Supporting MLA's Motion to Intervene - Page 5**
DC01/GEHAS/281476.2

future." *Id*. at 43.  Just like the intervening fishing groups in *Mosbacher*, here, MLA's members are the subject of the current regulatory plan that Plaintiffs seek to alter.  Indeed, Plaintiffs implicitly accept such fact.  (*See* Pl.s' Br. at 2 (Section 118 of the MMPA, "regulate[s] the interactions between marine mammals and U.S. commercial fisheries.").)  These permit holders have a protectable legal interest and intervention is appropriate.

Notably, this Court has granted mandatory intervention to fishing industry associations, states, and cities in groundfish fishery "deadline" litigation.  *See*, *e.g*., *CLF v. Evans*, 211 F. Supp. 2d 55 (D.D.C. 2002) (Kessler, J.); *see also CLF v. Evans*, 131 F. Supp. 2d 19 (D.D.C. 2001).  In *Evans*, the Secretary and his designee, the New England Fishery Management Council, failed to comply with a statutory deadline to implement a rebuilding plan for the New England groundfish fishery.  131 F. Supp. 2d at 7-8.  Judge Kessler recognized the profound practical implications that a so-called "deadline" case can have for commercial fishermen and their communities and, accordingly, granted intervention to all those who would be affected by the litigation.[5]  *See CLF v. Evans*, Civ. No. 00-1134 (D.D.C. Jan. 30, 2002) (Docket No. 42) (Order attached as Exhibit A).

Second, MLA's members have another and independent interest in the rulemaking process itself that is subject to impairment.  More specifically, this action brought by Plaintiffs represents what amounts to an opportunity to influence the rulemaking agency outside of the normal administrative channels.  Such opportunities are disfavored in this Circuit.  *See Action for Children's Television v. FCC*, 564 F.2d 458, 477 (D.C. Cir. 1977) (explaining that in rulemakings where "[p]rivate groups [are] competing for a specific valuable privilege" – in this

---

[5]  Further, it did not matter that the intervenors and others subsequently had an opportunity to challenge the final rule that resulted from this deadline case.  *See Oceana, Inc. v. Gutierrez*, No. 04-0811, 2005 U.S. Dist LEXIS 3959, at *4 (D.D.C. March 9, 2005) (challenge to final rule stemming from this Court's Order in *Evans*).

case for advantage in deciding the outcome of a specific rule – agencies should avoid giving "'any interested party advantages not shared by all.'") (quoting *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 56 n.124 (D.C. Cir. 1977)). In the rulemaking context, "important is the inconsistency of secrecy with fundamental notions of fairness implicit in due process and with the ideal of reasoned decisionmaking on the merits which undergirds all of our administrative law." *Home Box Office*, 567 F.2d at 56; *see also NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 777-78 (1969) (Harlan, J. dissenting) ("Public airing of problems through rule making makes the bureaucracy more responsive to public needs and is an important brake on the growth of absolutism in the regime that now governs all of us.").

Plaintiffs undeniably have brought this action to seek additional leverage in a rulemaking process they characterize as "stalled," whether that leverage comes from a court order or through negotiations with Defendant. Indeed, the so-called "deadline" cases upon which Plaintiffs rely often afford a plaintiff the opportunity to negotiate directly with the rulemaking agency over timelines and sometimes even substance. In fact, many of the cases Plaintiffs cite involved consent orders, stipulated dismissals, and the like.[6] For its part, MLA has participated actively

---

[6] The cases Plaintiffs principally rely upon – *Am. Lung Ass'n v. Reilly*, 141 F.R.D. 19, 22 (E.D.N.Y. 1992), *aff'd*, 962 F.2d 258, and *Envtl. Defense v. Leavitt*, 329 F. Supp. 2d 55 (D.D.C. 2004) – are inapposite. These cases invoke rulemaking that had not advanced to the proposed rule stage, so there was nothing as to which the plaintiffs could demand immediate implementation. *See, e.g., Am. Lung*, 962 F.2d at 260-61 (plaintiffs allege EPA has failed to comply with a requirement that it *review* ozone standards every five years) (emphasis added); *Envtl. Defense*, 329 F. Supp. 2d at 61-62, 65 ("EPA has done *nothing* with respect to the BART requirement, which is precisely the point of plaintiff's request of injunctive relief"; and, additionally, the proposed consent order sets timetable for both proposed and final rule). In addition, the rule in *Envtl. Defense* would set overall standards, not specific requirements for an individual park, project, or activity. 329 F. Supp. 2d at 59. The MLA's showings of interest, injury, and tracibility of showings are thus far more concrete. Finally, unlike the MMPA, the Clean Water Act in *Envtl. Defense* provided for special district court jurisdiction over allege "non-discretionary" duties, *id.* at 63-64, thus making that lawsuit virtually an expected part of the regulatory process. Thus, unlike the rulemakings in *Am. Lung* and *Envtl. Defense*, the MMPA

and responsibly at every stage of the take reduction rulemaking process since this process began in 1997 for Atlantic large whales. (McCarron Dec. ¶ 16.) It is an exercise in artifice for Plaintiffs to claim, as they do, that MLA and its members would have no protectable interest in what happens next in this pivotal rulemaking. This is far from the case in *Envtl. Defense*, where the rulemaking had yet to begin and would contain under the consent decree all of the elements of a regular-order agency rulemaking. 329 F. Supp, 2d at 67-68. In fact, in *Envtl. Defense*, the EPA even subjected its consent order to advance notice and comment before entering into it. *Id.* at 62. As noted above, *supra* at 3, because of the current posture of the rulemaking, MLA will *not* have further opportunity to participate in this administrative process, unless it is permitted to join the litigation and participate in the merits and, if any, remedial phases. NMFS' ultimate regulation will impact MLA's members, and MLA has an interest and is entitled to participate to the same extent as Plaintiffs in developing (or opposing the development of) any new regulation. Without being granted intervention, MLA will not be able to effectuate that interest.

MLA should not be denied intervention in this case, simply on the grounds that it may bring a legal challenge to NMFS' final regulatory action. The D.C. Circuit has stated that Rule 24(a)(2) requires an examination of the "practical consequences" of denying intervention, "even where the possibility of future challenge to the regulation remained available. Judicial review of regulations *after* promulgation may, 'as a practical matter,' afford much less protection than the opportunity to participate in post-settlement proceedings that seek to ensure sustainable regulations in the first place, with no need for judicial review." *Costle*, 561 F.2d at 909

---

rulemaking process here is nearly complete, with no further opportunities for public comment or the MLA's participation. Plaintiffs plain and simply are attempting to shift the rulemaking process into the judicial realm and compel a rule, any present alternative scheme for which will harm the MLA's members.

(emphasis added). In the interest of judicial economy, the Court should allow MLA to intervene at this time in order to protect its interest in the regulation of its industry.

As demonstrated above, MLA has several legally sufficient interests in the subject of this litigation, which are concrete and not speculative. Moreover, MLA's ability to protect those interests, as a practical matter, will be impaired unless it is allowed to intervene in this case.

## II.   ALTERNATIVELY, MLA MEETS THE REQUIREMENTS FOR PERMISSIVE INTERVENTION

Rule 24(b)(2) grants the Court discretion to allow permissive intervention upon timely application "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). In deciding whether to allow permissive intervention, a court should consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*

MLA's arguments arise out of the same facts as Plaintiffs' Complaint and raise the same issues as are framed therein. Thus, should this Court find that MLA is not entitled to intervene in this action as a matter of right, it should exercise its discretion and allow permissive intervention without restriction. *See Natural Resources Defense Council, Inc. v. Tennessee Valley Authority*, 340 F. Supp. 400, 408-409 (S.D.N.Y. 1971), *rev'd on other grounds,* 455 F.2d 255 (2d Cir. 1972) (granting permissive intervention to National Audubon Society where there were common questions of law and fact with the main action and Audubon demonstrated an interest in the underlying subject matter). Indeed, Plaintiffs' response to MLA's request for permissive intervention is itself very telling. Plaintiffs would concede to let MLA brief the "merits" of any timetable issue, but not be involved in any remedial phase, if such is warranted. Plaintiffs, very transparently, want to address these rulemaking issues with Defendant outside accepted administrative law procedures. As explained above, Judge Kessler specifically allowed the

**Reply Memorandum Supporting MLA's Motion to Intervene - Page 9**
DC01/GEHAS/281476.2

fishing industry to intervene in *Evans* over the conservation Plaintiffs' "vigorous" objections in a timetable case to conserve resources and insure the industry had an appropriate opportunity to participate in proceedings that would affect its members' livelihoods. *CLF v. Evans*, Civ. No. 00-1134, at 1 (D.D.C. Jan. 30, 2002) (App. A).

## CONCLUSION

For the foregoing reasons, and the reasons stated in its initial brief, the Court should grant MLA's Motion to Intervene as a defendant.

Dated:  May 7, 2007                                Respectfully submitted,

                                                                    /s/
                                                    David E. Frulla  (D.C. Bar No. 414170)
                                                    Shaun M. Gehan (D.C. Bar No. 483720)
                                                    KELLEY DRYE & WARREN, LLP
                                                    3050 K Street, N.W. – Suite 400
                                                    Washington, D.C.  20007
                                                    Telephone:  (202) 342-8400
                                                    Facsimile:  (202) 342-8451

                                                    ***Attorneys for Movant, Maine Lobstermen's Association***

# Appendix A:

## Order in *Conservation Law Found. v. Evans,* Civ. No. 00-1134 (GK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSERVATION LAW FOUNDATION,
et al.,
       Plaintiffs,

v.

DONALD EVANS, et al.,

       Defendants.

FILED
JAN 3 0 2002
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Civil Action No. 00-1134 (GK)

O R D E R

The Court has before it Motions to Intervene from the following: Associated Fisheries of Maine, Inc., the City of Portland, Maine, the City of New Bedford, Massachusetts, the Trawlers Survival Fund, the Commonwealth of Massachusetts, the Northeast Seafood Coalition, the State of Maine, Paul Parker, Craig A. Pendleton, the Northwest Atlantic Marine Alliance, Inc., Stonington Fisheries Alliance, Saco Bay Alliance, and Cape Cod Commercial Hook Fishermen's Association, Inc. The Defendants take no position on intervention and Plaintiffs vigorously oppose it.

While the Court shares Plaintiffs' concern that the admission of additional parties will lead to more paper, procedural complexities, and above all, delay, the applicable case law relied upon by proposed Intervenors clearly supports their right to intervention under Fed.R.Civ.P. 24(a). Alternative Research and Development Foundation v. Veneman, 262 Fed. 3d 406, 411 (D.C.Cir. 2001);

(N)

42

<u>Natural Resources Defense Council v. Costle</u>, 561 Fed. 2d 904, 909-913 (D.C.Cir. 1977); <u>Hodgson v. United Mine Workers of America</u>, 129, 130 (D.C.Cir. 1972). As proceedings develop in the remedial phase of this lawsuit, the Court will take whatever action it deems appropriate to ensure that the admission of Intervenors will not cause either delay or procedural complexities.

Wherefore, it is this __29th__ day of January 2002, hereby

**ORDERED** that all pending Motions for Intervention be **granted**.

_____
Gladys Kessler
United States District Judge

**Copies to:**

Eric Bilsky, Esq.
Oceana, Inc.
2501 M Street, NW
Suite 300
Washington, DC 20037-1311

Adam Issenberg
Environmental and Natural
Resources Division
Ben Franklin Station
P.O. Box 7369
Washington, DC 20044-7369

David E. Frulla, Esq.
Brand & Frulla, P.C.
923 15th Street, NW
Washington, DC 20005

Eldon VanCleef Greenberg
Garvey, Schubert & Barer
1000 Potomac Street, NW
Washington, DC 20007

Kirsten Engel
Tulane Law School
6329 Freret Street
New Orleans, LA 70118-5760

Mark A. Randlett
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006

James L. O'Dea, III
Suite 1000
1111 14th Street, NW
Washington, DC 20005